671 A.2d 15

**Peter Donald HARLEY**

v.

**STATE of Maryland.**

**No. 160, Sept. Term, 1993.**

Court of Appeals of Maryland.

Feb. 6, 1996.

John L. Kopolow, Assistant Public Defender, (Stephen E. Harris, Public Defender, both on brief), Baltimore, for appellant.

Gary E. Bair, Assistant Attorney General, (J. Joseph Curran, Jr., Attorney General, both on brief), Baltimore, for appellee.

Argued before MURPHY, C.J., and ELDRIDGE, RODOWSKY, CHASANOW, KARWACKI, BELL and RAKER, JJ.

PER CURIAM.

The issue in this criminal case concerns the trial court's application of the principles set forth in *Batson v. Kentucky*, 476 U.S. 79, 84, 106 S.Ct. 1712, 1716, 90 L.Ed.2d 69, 79 (1986), in the context of a defendant's allegation that the prosecution's peremptory strikes were racially motivated.

Peter Donald Harley, an African–American male, was charged with murder and related offenses based upon the killing of Timothy Kidd when a potential drug buy went awry. After a jury trial in the Circuit Court for Prince George's County, Harley was found guilty of first-degree felony murder, second-degree murder, robbery with a deadly weapon, attempted robbery with a deadly weapon, and use of a handgun in commission of a felony. Harley was sentenced to life imprisonment without a possibility of parole for felony murder and to a concurrent term of twenty-five years imprisonment on the handgun conviction. No sentence was imposed on the other convictions because of merger.

The only question raised by Harley in this appeal concerns the State's peremptory challenges during jury selection. The State's first four peremptory challenges were all against African–Americans. After the fourth prospective juror was challenged by the State, defense counsel raised a *Batson* objection. Regarding two of these prospective jurors struck by the State, Harley's attorney stated that he could "understand why" the prosecutor "might" have challenged them, as one "had two cousins involved in serious criminal offenses" and the other "had been a victim of a stolen car" and "was a lawyer." With respect to the other two potential jurors, namely Ms. Marcia Shaw and Mr. Keith Brooks, defense counsel pointed out that neither prospective juror had answered any questions during voir dire. Defense counsel suggested that "the State [was] inappropriately challenging these two black jurors without any basis for doing so other than the racial basis." The following then ensued:

"THE COURT: For the record, there are twelve people seated in the box, which eight of them are black people as far as the Court is concerned.... I'm going on the record that I think it is very difficult for a judge to determine the race of prospective jurors due to the cosmopolitan nature of Prince George's County. Go ahead.

"ASSISTANT STATE'S ATTORNEY: First thing I will note for the record, I don't believe the defendant has made out a prima facie case of discrimination by the State,

particularly in light of the fact that he concedes that at least two of their challenges he can understand why I would challenge them. However, to go on, as far as [the two jurors] Mr. Brooks and Miss Shaw, Mr. Niland [defense counsel], I know, in the past has tried cases with me and this member of the bench, and as a general rule I try to put on people who are married, who are over the age of thirty. I think that they are more stable. I think that they are more State oriented people. But Miss Shaw and Mr. Brooks are under the age of thirty.

"As to Miss Shaw, quite frankly, I initially seated her because I thought Mr. Niland might strike her, and I was basically hoping to get an additional strike because, when Ms. Shaw first came up, there was something about her attitude or the way she said here that made me write a note that she acts like she does not want to be here. I certainly as a member of the State or representing the State don't want anyone on the jury who I think doesn't want to be here, so because of her age, the fact that she is single, and because I made this note that she acted like she did not want to be here that's why I am striking her now.

"As to Mr. Brooks, the sole reason that I am striking him is because of his age, nineteen, and the fact that he is single.

"THE COURT: All right. I am going to deny the defense motion at this time. You have put on the record what has happened so far."

Jury selection continued, and when there was only one more juror to be selected, the prosecuting attorney struck Ms. Mary Hardison, a fifty-six year-old, widowed, African–American female. Defense counsel raised a *Batson* challenge to this strike as well, noting that Ms. Hardison had not responded to anything during the voir dire questioning. The prosecutor explained her reason as follows:

"ASSISTANT STATE'S ATTORNEY: Middle aged black woman? The reason I excused her is because the next one is a police officer, and I would love to be able to put the police officer on. I assume, however, that Mr.

Niland will challenge her, and there is another juror further down the list that I would like to get to.

"THE COURT: I will go with your reason. Deny the motion."

Subsequently, the state exercised a peremptory strike against Ms. Millicent Barnes, a twenty-four year old single African–American female. The defendant again made a *Batson* challenge, and the following colloquy occurred:

"THE COURT: That would be the State's—

"ASSISTANT STATE'S ATTORNEY: Seven[th]. Court will note that the State has consistently been excusing jurors here under the age of 30 or at least as consistently as I can. The juror that I excused just before Miss Barnes was a twenty-one year old white male who I excused because of age. Miss Barnes is being excused because she is twenty-four years old and she is single, and I have been consistently excusing those jurors because I don't—

"THE COURT: Miss Barnes is a black woman.

"ASSISTANT STATE'S ATTORNEY: In addition, there is a juror that I am attempting to get to on the list.

"DEFENSE COUNSEL: I want to say that Miss Barnes is a black female. Miss Barnes did not respond to any voir dire questions. She gave no inclination of any kind that she would be an adverse juror for the State, and I don't think— and she is twenty-four years old. Says on here she has a college education. She is employed.

\*     \*     \*     \*     \*     \*

"What I see on here is that's the third black juror that the State has stricken whom made no response of any kind to the voir dire and the State says that they are—their only basis is, as far as I can tell, the age of the juror being under thirty years old. I don't think that is sufficient reason.

"ASSISTANT STATE'S ATTORNEY: And I believe I indicated that they are single.

\*     \*     \*     \*     \*     \*

"DEFENSE COUNSEL: The last juror before that, the only reason the State gave is she wants to get further down the line because she has a particular juror in mind. That lady was fifty-six.

"THE COURT: All right. For the record, the Court is going to go on record—I count eight people out of eleven in the box as being black, and I am satisfied with the State's reasons and deny the motion."

Ultimately, twelve jurors and two alternates were selected. Nine of the regular jurors selected, and both alternates, were African–Americans. Before the jury was sworn, defense counsel placed on the record his explicit refusal to waive his *Batson* challenges.

After his conviction, Harley appealed to the Court of Special Appeals. There he argued, *inter alia*, that the State's peremptory strikes against the above discussed jurors violated the Equal Protection Clause of the Fourteenth Amendment. In an unreported opinion, the Court of Special Appeals took the position "that a *prima facie* case [of discrimination] was impliedly found by the court to have been made by appellant. . . ." The intermediate appellate court went on to hold that the trial judge gave an inadequate explanation of " 'whether the established *prima facie* case of purposeful discrimination [had] been overcome by the State' " and that it "is insufficient for the trial judge to . . . simply say that it is satisfied with the State's reasons for exercising the strikes." The appellate court remanded the case to the Circuit Court for Prince George's for "the trial judge to fulfill his fact-finding obligation." The State did not file in this Court a petition for a writ of certiorari seeking review of the Court of Special Appeals' decision.[1] The defendant Harley filed a pro se petition for a writ of certiorari which we denied, *Harley v. State*, 331 Md. 87, 626 A.2d 370 (1993).

---

1. In the present appeal before this Court, neither side has raised any issue concerning the remand ordered by the Court of Special Appeals. Consequently, whether the Court of Special Appeals erred in remanding the case is not before us.

On remand, the trial judge again considered the peremptory challenges in question and found that, in each instance, the State had successfully rebutted the defendant's *prima facie* showing of racial motivation. With regard to Mr. Brooks and Ms. Shaw, the trial judge held that both age and marital status were "valid reasons." Moreover, as to Ms. Shaw, the court held that "attitudinal body language" was, in the context, a valid reason. In particular, the judge determined that a juror's demeanor was a valid basis upon which the prosecution could exercise a peremptory challenge when it "sense[d] that the juror is not going to put the proper attention on the case...."

Turning to the State's challenge of Ms. Hardison, the 56–year old African–American widow, the trial judge on remand held that the State's explanation, that it had struck her in order to reach another prospective juror, was a valid, race-neutral reason. In so deciding, the trial judge went on to state that

> "lawyers traditionally ... gamble on who they are going to get on that jury that will best serve that particular party. And that's part of their duty as a lawyer, whether they are a State's Attorney or defense counsel. And for the State to gamble and try to get a policeman on the jury, that was their right and privilege."

Finally, as to Ms. Barnes, the trial judge found that the reasons offered by the State for challenging her were also valid. The judge held that Ms. Barnes's age and marital status were bona fide, race-neutral reasons. The judge pointed out that the prosecution had consistently exercised its peremptory challenges throughout jury selection in this case in accordance with its stated general policy against unmarried jurors below the age of thirty. Moreover, the trial judge again held that the prosecution's desire to reach another juror was also a valid basis upon which to exercise a peremptory challenge.

Harley appealed to the Court of Special Appeals, raising the single issue of whether the "trial judge erred in ruling that the

State produced satisfactory nondiscriminatory reasons for its peremptory strikes of four black jurors." Before the case was heard in the Court of Special Appeals, this Court issued a writ of certiorari.

The defendant Harley argues that the prosecutor's reasons for exercising peremptory challenges against four African-American prospective jurors "failed to rebut the *prima facie* case with respect to each of the four jurors." (Defendant's brief at 7). Because of this, the defendant asserts that the trial judge erred in finding that the State had given "satisfactory nondiscriminatory reasons." (*Id.* at 6).

As we recently reiterated in *Gilchrist v. State,* 340 Md. 606, 627, 667 A.2d 876, 886 (1995), quoting *Hernandez v. New York,* 500 U.S. 352, 364, 111 S.Ct. 1859, 1869, 114 L.Ed.2d 395, 409–409 (1991), the trial judge's findings in evaluating a *Batson* challenge are "essentially factual, and therefore are 'accorded great deference on appeal.'" Accordingly, "[a]n appellate court will not reverse a trial judge's determination as to the sufficiency of the reasons offered unless it is clearly erroneous." *Gilchrist v. State, supra,* 340 Md. at 627, 667 A.2d at 886. Moreover, in determining whether the reason offered for a peremptory strike is valid or satisfactory, the questions before the trial judge are whether the reason is a "pretext[ ] for purposeful discrimination" and whether the reason itself is one "that does not deny equal protection." *Purkett v. Elem,* —— U.S. ——, ——, 115 S.Ct. 1769, 1771, 131 L.Ed.2d 834, 839 (1995). *See Gilchrist v. State, supra,* 340 Md. at 626–627, 667 A.2d at 885–886.

As to three of the prospective jurors challenged by the State, Ms. Shaw, Mr. Brooks and Ms. Barnes, the prosecution stated that, *inter alia,* it challenged these jurors on the basis of age and marital status. At trial, the Assistant State's Attorney explained that, as a general rule, she preferred to seat jurors who are over thirty years old and married. She believed that jurors who possess these characteristics are generally more "stable" and therefore more "state-oriented."

The trial judge found these reasons to be non-pretextual and race-neutral.[2]

■ It is significant that, at the time the *Batson* objections to the State's strikes against Ms. Shaw and Mr. Brooks were raised by the defendant, eight of the twelve jurors then in the box were African–Americans. Furthermore, the record confirms that Ms. Shaw, Mr. Brooks, and Ms. Barnes were all under thirty years of age and single at the time of the trial. Also, in providing her explanation for striking Ms. Shaw, Mr. Brooks, and Ms. Barnes on the basis of age and marital status, the prosecutor noted that both defense counsel and the court were well aware of her policy in this regard. Neither the court nor defense counsel contradicted her. The record also shows that the prospective juror just prior to Ms. Barnes was also peremptorily challenged by the State. That juror was single, *white*, and twenty-one years old. Thus, the prosecuting attorney appeared to be applying her policy of striking young unmarried persons without regard to the race of the prospective jurors.

The prosecuting attorney also stated that she struck two of the prospective jurors in question, Ms. Hardison, and later Ms. Barnes, in order to reach prospective jurors further down on the venire whom the State preferred.[3] The prosecutor identified one of the preferred jurors as a police officer, explaining that she "would love to be able to put the police officer on [the jury]." The prosecuting attorney did realize, however, "that [defense counsel] [would] challenge [the police

---

**2.** The defendant did not argue in the trial court, and does not argue in this Court, that the reasons of age and marital status are themselves impermissibly discriminatory. In other words, the defendant has not advanced the argument that excluding a prospective juror because of age or marital status itself violates the equal protection rights of the prospective juror. Accordingly, we have no occasion in this case to explore the matter.

**3.** As mentioned previously, Ms. Barnes, the object of the last of the challenged peremptory strikes, was also stricken, according to the State, because of her age and marital status.

officer]" but explained that "there [wa]s another juror further down the list" that she also wanted to empanel.

As previously pointed out, it was for the trial judge to decide whether the race-neutral reasons given by the prosecuting attorney were pretextual. The judge found that they were not pretextual. Under the circumstances reviewed above, we cannot conclude that the trial judge's findings were clearly erroneous.

*JUDGMENT OF THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY AFFIRMED, WITH COSTS.*