812 A.2d 1034

**Jerome Maurice EDMONDS**

v.

**STATE of Maryland.**

**No. 20, Sept. Term, 2002.**

Court of Appeals of Maryland.

Dec. 18, 2002.

Nancy S. Forster, Deputy Public Defender (Stephen E. Harris, Public Defender, on brief), Baltimore, for petitioner.

Zoe Gillen White, Assistant Attorney General (J. Joseph Curran, Jr., Attorney General of Maryland, on brief), Baltimore, for respondent.

Argued before BELL, C.J., ELDRIDGE, RAKER, WILNER, CATHELL, HARRELL and BATTAGLIA, JJ.

RAKER, Judge.

This case involves the exercise of peremptory challenges under *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). The principle question raised in the certiorari petition is whether the trial court erred in creating a remedy after finding a *Batson* violation. Unfortunately, because the trial court failed to make the necessary findings as to purposeful discrimination required by *Batson*, we are unable to answer the question. We shall therefore remand the case to the trial court to enable the court to evaluate the credibility of the prosecutor's race-neutral explanations and to determine whether petitioner carried his burden of proving purposeful discrimination.

As a predicate to petitioner's conclusion that the prosecutor exercised peremptory challenges in violation of the strictures of *Batson*, he maintains that a uniform policy of exercising a peremptory challenge to all jurors with relatives who have been convicted of a crime, without regard to the particular circumstances of the case, is inherently discriminatory and violates the rubrics of *Batson*. We do not agree.

## I.

Jerome Maurice Edmonds, petitioner, was indicted by the Grand Jury for Baltimore County for first-degree murder, use of a handgun in the commission of a felony, use of a handgun in a crime of violence, attempted robbery, and conspiracy to commit robbery in the shooting death of a Caucasian youth. The State served Edmonds with a notice of intent to seek the death penalty.[1]

The trial commenced on February 6, 2001, in the Circuit Court for Baltimore County. Petitioner is African American. The trial court conducted voir dire of ninety-nine potential jurors [2] and included in the voir dire the following question: "Is there any member of the jury panel or any member of your immediate family who has been the victim of a crime or, conversely, have you or any member of your immediate family been convicted of a crime?"

At the conclusion of the voir dire, forty-two prospective jurors remained, six of whom were African American. Five of the six African–American venirepersons responded to voir dire questions. Juror number 704 indicated that her brother had been murdered by a drug dealer in New York City and that she believed the killer had received leniency because the defendant's brother was a police officer. Ms. Ashe, juror number 614, reported that, twenty years ago, her sister had used an alias, and had been convicted of a drug violation. Ms. Ashe stated that she could be impartial. Juror number 56 discussed pressing work obligations. Ms. Smith, juror number 719, believed her nephew had been convicted of attempted murder but thought that he had been treated fairly and that

---

**1.** Before jury selection, Edmonds elected to be sentenced by the court; therefore, the court asked no death-qualifying questions during voir dire. *See* Maryland Code (1957, 1996 Repl.Vol., 2000 Supp.) Article 27, § 413 (current version at Maryland Code (1957, 2002 Repl.Vol.) § 2–303 of the Criminal Law Article).

**2.** In criminal cases where the defendant is subject to a sentence of death or life imprisonment, a defendant may exercise twenty peremptory challenges, and the State may exercise ten. Maryland Code (1973, 2002 Repl.Vol.) § 8–301 of the Courts and Judicial Proceedings Article.

she could be impartial as a juror. Ms. Nelson, juror number 66, indicated that she thought she recognized the defendant as someone she knew but then realized she had been mistaken.

Defense counsel objected to the State's use of peremptory challenges against five potential African–American jurors on the grounds that the strikes were racially discriminatory.[3] When the prosecutor exercised his first two peremptory challenges against African–American women, juror number 56 and Nelson, the defense raised a *Batson* challenge. The prosecutor explained that he had earlier attempted to strike juror number 56 for cause because of her work obligations and that he challenged Nelson because she had misidentified the defendant.[4]

The next African American, Ashe, was acceptable to both parties and was seated. The parties agreed to two more jurors, and, with twelve jurors seated, the court asked whether the jury was acceptable. The State excused a Caucasian woman, and selection continued. When next asked whether the jury was acceptable, defense counsel exercised additional strikes.[5] The prosecutor then raised a *Batson* challenge on the grounds that defense counsel had stricken three Caucasian

---

**3.** Petitioner does not challenge the peremptory strike of either juror number 704 or 56; thus those challenges are not at issue on appeal.

**4.** The prosecutor explained:

"The lady whose name is Ms. . . . . Nelson mis-identified the Defendant up in voir dire and thought she knew him. Any prospective juror that would mis-identify someone I plan on striking. I point out at this time any prospective juror who has a relative who has a prior arrest or criminal record, whether he be white, black, red, yellow, any color, I'm telling the Court right now the State will strike them. I plan on doing it no matter what their color is and if defense thinks it's a pattern, so be it, but I'm stating my reason ahead of time."

**5.** A party may exercise a peremptory challenge any time before the jury is sworn. Maryland Rule 4–313 provides, in pertinent part, as follows:

"After the required number of jurors has been called, a party may exercise any remaining peremptory challenges to which the party is entitled at any time before the jury is sworn, except that no challenge to the first 12 jurors shall be permitted after the first alternate juror is called."

*See also Parker v. State,* 227 Md. 468, 471, 177 A.2d 426, 427 (1962).

prospective jurors. The court overruled the State's *Batson* challenge, and defense counsel pointed out that the prosecutor was not consistently striking jurors with prior criminal records or relatives with criminal records because the State seated Ashe. In response, the prosecutor indicated that he would challenge Ashe later because she wore a religious symbol on her ear and her sister had a criminal conviction. The prosecutor pointed out that previously he struck two Caucasian jurors whose relatives had criminal records.[6] The prosecutor reiterated that uniformly he would strike persons whose relatives had criminal records but that he was not doing so because of race.[7] He assured the court that the jury panel would include African Americans.

The jury was acceptable to the State but not to the defense; defense counsel exercised additional strikes. The parties reviewed more jurors and exercised additional peremptory strikes; the State then struck juror number 704, Ashe and Smith. The jury was acceptable to the State, but defense counsel objected because it included only one African American. The defense argued to the trial court that the State's use of five strikes against African–American jurors, in a case with a black defendant and white victim, constituted a premeditated effort to remove African Americans from the jury. Significantly, the judge, in response, remarked that he did not "buy the State's position" that it was going to strike jurors with relatives convicted of crimes but who stated they could be impartial.

---

6. The State exercised peremptory challenges to strike a Caucasian man whose uncle had been convicted of stealing from a bank and whose uncle and cousin were in jail and a Caucasian woman whose husband had been convicted of a "DUI."

7. The prosecutor remarked:
 "I'm going to be uniform, Judge, as to anyone. I don't look at people for their race. They're going to be struck uniformly, no matter what, whether their race is African American and just happen of [sic] the family members convicted. That's just what the facts and stats are for this panel. But they're going to be treated uniformly whether they are red, green or blue. That is a neutral reason that every Court has upheld."

The trial court asked the prosecutor his reasons for striking five African American venirepersons. The following colloquy took place:

"THE COURT: Nelson.

"PROSECUTOR: Yes. That was the mis-identification. She thought she knew the Defendant, good, bad or indifferent.

"THE COURT: Yes. Bad, indifferent or silly, that's your reason.

"PROSECUTOR: No, my reason is she could have been any race, creed or color, religion, I'm going to strike with a mis-identification. She thought she knew him.

"THE COURT: First of all, so the record is clear, she did not misidentify anybody. She came up here on her own and said that initially she thought that maybe she knew Mr. Edmonds but when she got up here she realized that she didn't know him, and she was perfectly candid about it. So you may not characterize that as a mis-identification because it was not a misidentification."

\* \* \*

"THE COURT: .... What about Ashe, number 614?

"PROSECUTOR: Prior criminal record.

"THE COURT: She didn't have. Her family did.

"PROSECUTOR: Family, criminal record.

"DEFENSE COUNSEL: Twenty years ago, her sister.

"PROSECUTOR: Her sister was convicted, had a drug charge.

"THE COURT: She thought she had been treated fairly. What about Smith?

"PROSECUTOR: Smith.

"DEFENSE COUNSEL: What number is that?

"PROSECUTOR: For attempted murder.

"THE COURT: What's that got to do with the price of eggs?

"PROSECUTOR: Are you asking the reason why we struck her?

"THE COURT: You say she could not sit because her nephew is in jail?

"PROSECUTOR: ... When asked her to state her—I wrote a question mark next to her—she said she could but her demeanor told me otherwise. I think we have a right to strike her. If the question is what she says, we don't know whether she is, whether she is telling the truth. We don't know if there is a bias. Demeanor told me she wasn't even sure if she could be unbiased.

"THE COURT: I didn't notice that. Her demeanor didn't tell me that."

Defense counsel then asked the court to seat Smith, but the court did not rule on that proposal. Shortly thereafter, defense counsel requested the court to reseat Nelson:

"DEFENSE COUNSEL: Your Honor, may I say that I think Juror Number 66, Ms. Nelson, who was friends with the County Police, and was the one that [the prosecutor] has mischaracterized as misidentifying would perhaps be the most appropriate to reseat. It was inconceivable to me that she was strickeny....

"PROSECUTOR: .... We have given race neutral reasons for striking that person.

"THE COURT: But I have to agree with you, you know, that part of the deal the Judge has to buy, and the race neutral—

"PROSECUTOR: I understand that but more important—

"THE COURT: You mischaracterize why you did it, though, why you struck her. She did not mis-identify anybody, and that was the reason you gave. I'm having trouble with it because it's—it didn't happen."

The court reseated Nelson as a juror.[8]

Before the jury was sworn, defense counsel objected to the jury as impaneled:

---

**8.** In order to reseat Nelson, the trial judge required the State to exercise a peremptory challenge of any juror, except for the sole African American, seated on the panel.

"I asked for the specific replacement of Ms. Nelson believing that it was the most untenable of all the State's objections but not giving any credence, with no personal rancor toward [the prosecutor], not accepting the neutral, the racial neutrality offered by the State . . . . I believe that the State has inappropriately created a pattern of striking African Americans and that their allegations of neutrality are insufficient as a matter of law."

The court ruled as follows:

"Okay. And so they are who they are. With regard to the five of the eight that—I guess nine that the State took, I just refuse to accept the reason that the State gave for Nelson. I just specifically reject that reason as being race neutral on its face. That's why when the defense asked that I put her back on there, I did."

The jury was composed of nine Caucasians, two African Americans, and one South Asian American.

The jury convicted Edmonds of felony murder, attempted armed robbery, and use of a handgun in the commission of a crime of violence. He was found not guilty of premeditated first-degree murder. The court sentenced Edmonds on the felony murder to life imprisonment, with all but forty-five years suspended, and on the handgun violation, to a term of incarceration of five years without parole, to be served concurrently.

Edmonds noted a timely appeal to the Court of Special Appeals. Before that court, he raised the single issue of whether the trial judge erred in fashioning a remedy for the State's *Batson* violation whereby one of the improperly stricken jurors was reseated but others were not. The State argued that because the trial court explicitly rejected the State's rationale for excluding Nelson, it *implicitly* accepted the State's reasoning respecting the other venirepersons in question. In response to that argument, the intermediate appellate court reasoned: "We do not necessarily accept that contention; but considering the totality of the circumstances, the comments made by the trial judge, and the remedy that

was pursued, the trial judge was correct." In an unreported opinion, the Court of Special Appeals affirmed, holding that the trial judge did not err in fashioning a remedy for a *Batson* violation by reseating Nelson.

We granted Edmonds' petition for writ of certiorari to determine whether the trial court properly exercised its discretion in remedying a *Batson* violation by reseating one improperly stricken juror. We hold that the trial court failed to satisfy the requirements of *Batson*. We shall remand the case to the trial court to make a determination, under *Batson's* step three, of the credibility of the prosecutor's reasons for striking Ashe and Smith and therefore whether petitioner carried his burden of proving purposeful discrimination.

## II.

Petitioner asserts three arguments. First, he argues that, as a matter of law, the prosecutor's policy of striking jurors whose relatives had been convicted of a crime, without regard to the particular circumstances of the case, is inherently discriminatory and violates the rubrics of *Batson*. Second, assuming *arguendo* that the State's policy was race-neutral, petitioner argues that the trial court found that the reasons given for striking jurors Ashe and Smith were pretextual under *Batson's* step three. As such, the trial court's determination is entitled to deference and therefore is not clearly erroneous. Finally, petitioner argues that the error in the case lies in the remedy created by the trial court for the *Batson* violations. Because the trial court found three *Batson* violations, the reseating of only one juror inadequately remedied the harm.

The State argues, in response, that Edmonds waived his objections to the striking of Ashe and Smith by requesting the trial court to reseat only juror Nelson. On the merits, the State does not dispute the trial court's finding as to Nelson but argues that the trial court implicitly found that Ashe and Smith were struck for race-neutral, non-pretextual reasons, that the court's finding was not clearly erroneous, and that the

trial court appropriately remedied any harm by seating Nelson.

## III.

We turn to the State's argument that petitioner waived his *Batson* argument. The State contends that because petitioner asked for one remedy and received the relief he requested—the reseating of Nelson—he cannot now challenge the court's remedial actions. *See Klauenberg v. State,* 355 Md. 528, 545, 735 A.2d 1061, 1070 (1999)(holding there are no grounds to appeal when defendant receives the remedy he requested from the trial court).

We hold that petitioner did not waive appellate review of his *Batson* claims. Petitioner's comment that Nelson "would perhaps be the most appropriate to reseat" did not constitute a waiver of his other objections. Petitioner objected repeatedly to the State's exercise of peremptory challenges to exclude African–American venirepersons. Petitioner also asked the court to reseat Smith, but the court did not comply. Furthermore, petitioner excepted to the final composition of the jury and sufficiently pursued the *Batson* challenges. *See State v. Robinson,* 237 Conn. 238, 676 A.2d 384, 386–87 (1996)(concluding that a party timely raises a *Batson* objection if the claim is brought to the attention of the trial court before the jury is sworn). He did not waive his claims. *See Gilchrist v. State,* 340 Md. 606, 617–18, 667 A.2d 876, 881–82 (1995).

## IV.

The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution forbids the striking of a venireperson on the basis of race. *Batson v. Kentucky,* 476 U.S. 79, 89, 106 S.Ct. 1712, 1719, 90 L.Ed.2d 69 (1986); *Strauder v. West Virginia,* 100 U.S. 303, 310, 25 L.Ed. 664 (1879). Peremptory challenges cannot be exercised to exclude members of a cognizable racial group from a jury. *Batson,* 476 U.S. at 89, 106 S.Ct. at 1719, 90 L.Ed.2d 69; *Gilchrist v. State,* 340 Md. 606, 625, 667 A.2d 876, 885 (1995).

The underlying purpose of *Batson* and its progeny is to protect the defendant's right to a fair trial, to protect the venireperson's right not to be excluded on an impermissible discriminatory basis, and to preserve public confidence in the judicial system. *Powers v. Ohio*, 499 U.S. 400, 404–10, 111 S.Ct. 1364, 1367–70, 113 L.Ed.2d 411 (1991); *Batson*, 476 U.S. at 85–88, 106 S.Ct. at 1716–18, 90 L.Ed.2d 69; *Jones v. State*, 343 Md. 584, 592–94, 683 A.2d 520, 524–25 (1996); *Gilchrist*, 340 Md. at 620–21, 667 A.2d at 883.

The United States Supreme Court has outlined a three-step formula for determining whether a peremptory challenge has been exercised in violation of the Equal Protection Clause.[9] *See Batson*, 476 U.S. at 96–98, 106 S.Ct. at 1723–24, 90 L.Ed.2d 69; *Purkett v. Elem*, 514 U.S. 765, 767–68, 115 S.Ct. 1769, 1770–71, 131 L.Ed.2d 834 (1995); *Hernandez v. New York*, 500 U.S. 352, 358–59, 111 S.Ct. 1859, 1865–66, 114 L.Ed.2d 395 (1991)(plurality opinion); *id.* at 372, 111 S.Ct. at 1873, 114 L.Ed.2d 395 (O'Connor, J., concurring in judgment); *Parker v. State*, 365 Md. 299, 307–08, 778 A.2d 1096, 1100–01 (2001); *Gilchrist*, 340 Md. at 625, 667 A.2d at 885. In *Whittlesey v. State*, 340 Md. 30, 665 A.2d 223 (1995), we discussed *Batson* and the three-step process a court must follow in assessing a *Batson* claim. We said:

"When a criminal defendant raises a *Batson* claim, the trial judge must follow a three-step process. The burden is initially upon the defendant to make a *prima facie* showing of purposeful discrimination [step one]. If the requisite showing has been made, 'the burden shifts to the State to come forward with a neutral explanation for challenging black jurors [step two].' 'Finally, the trial court must

---

9. The United States Supreme Court granted certiorari in *Miller–El v. Johnson*, 261 F.3d 445 (5 Cir.2001), *cert. granted sub nom. Miller–El v. Cockrell*, 534 U.S. 1122, 122 S.Ct. 981, 151 L.Ed.2d 963 (2002). Miller–El contends that the trial court should have considered statistical "pattern and practice" evidence, in evaluating whether the prosecutor's peremptory strikes in his case were proper, that the Dallas County, Texas, prosecutor's office historically and systematically excluded African Americans from jury service.

determine whether the defendant has carried his burden of proving purposeful discrimination [step three].' "

*Whittlesey,* 340 Md. at 46–47, 665 A.2d at 231 (citations omitted).

■■■ Once the claimant establishes a prima facie showing of discrimination, step one, the burden shifts to the proponent of the strike to proffer a facially valid, race-neutral explanation, step two. *See Purkett,* 514 U.S. at 767–68, 115 S.Ct. at 1770–71, 131 L.Ed.2d 834. An explanation must be race-neutral, but it does not have to be persuasive or plausible. *Id.,* 514 U.S. at 767, 115 S.Ct. at 1771, 131 L.Ed.2d 834. Any reason offered will be deemed race-neutral unless a discriminatory intent is inherent in the explanation. *Id.* at 768, 115 S.Ct. at 1771, 131 L.Ed.2d 834; *Hernandez,* 500 U.S. at 360, 111 S.Ct. at 1866, 114 L.Ed.2d 395. If the defending party offers a race-neutral reason, the challenging party must demonstrate that the offered explanation merely is a pretext for a discriminatory intent or purpose.

■■■ The persuasiveness of the proffered justification becomes relevant at step three when the trial court evaluates whether the opponent of the strike has met his or her burden of proving purposeful discrimination. *Purkett,* 514 U.S. at 768, 115 S.Ct. at 1771, 131 L.Ed.2d 834. A discriminatory purpose may be inferred from the totality of the circumstances and relevant facts. *Hernandez,* 500 U.S. at 363, 111 S.Ct. at 1868, 114 L.Ed.2d 395. Among the factors the court may consider to determine whether the proponent intended to discriminate are: the disparate impact of the prima facie discriminatory strikes on any one race; the racial make up of the jury; the persuasiveness of the explanations for the strikes; the demeanor of the attorney exercising the challenge; and the consistent application of any stated policy for peremptory challenges. *See id.* at 363–64, 111 S.Ct. at 1868–69, 114 L.Ed.2d 395; *Harley v. State,* 341 Md. 395, 403–04, 671 A.2d 15, 19 (1996). "[T]he decisive question will be whether counsel's race-neutral explanation for a peremptory challenge

should be believed." *Hernandez,* 500 U.S. at 365, 111 S.Ct. at 1869, 114 L.Ed.2d 395 (plurality opinion).

■■■■ The ultimate burden of proving that a peremptory challenge was motivated by race always remains with the opponent of the challenge. *Purkett,* 514 U.S. at 768, 115 S.Ct. at 1771, 131 L.Ed.2d 834; *Batson,* 476 U.S. at 93, 106 S.Ct. at 1721, 90 L.Ed.2d 69; *Gilchrist,* 340 Md. at 626, 667 A.2d at 886. The trial judge's findings in evaluating a *Batson* challenge are essentially factual and accorded great deference on appeal. *Harley,* 341 Md. at 402, 671 A.2d at 18 (citing *Gilchrist,* 340 Md. at 627, 667 A.2d at 886). Whether a reason is race-neutral rests in large part on a credibility assessment of the attorney exercising the peremptory challenge. *Hernandez,* 500 U.S. at 364–65, 111 S.Ct. at 1868–69, 114 L.Ed.2d 395. The trial judge is in the best position to assess credibility and whether a challenger has met his burden. Accordingly, on appellate review, we "will not reverse a trial judge's determination as to the sufficiency of the reasons offered unless it is clearly erroneous." *Gilchrist,* 340 Md. at 627, 667 A.2d at 886.

■■■■ A trial court has "the duty to determine if the [challenger of the peremptory strikes] has established purposeful discrimination." *Batson,* 476 U.S. at 98, 100, 106 S.Ct. at 1724, 90 L.Ed.2d 69; *accord Parker,* 365 Md. at 308, 778 A.2d at 1101 (quoting *Purkett,* 514 U.S. at 768, 115 S.Ct. at 1771, 131 L.Ed.2d 834). A trial court may not rule on a *Batson* motion without determining whether it credits the strike proponent's race-neutral explanation for each challenged strike. *See, e.g., Barnes v. Anderson,* 202 F.3d 150, 156, 157 (2d Cir.1999). If a trial court determines that a reason given for a peremptory challenge is a pretext for purposeful discrimination and upholds a *Batson* motion, the court has "the discretion to fashion a remedy for a *Batson* violation that addresses and resolves the specific harm caused by that violation." *Jones,* 343 Md. at 602–03, 683 A.2d at 529.

## V.

 Turning to the merits of petitioner's *Batson* challenge, we note first that step one, whether petitioner has made a prima facie showing that the State's challenges were racially motivated, is not at issue in this case. The issue is moot because the State offered explanations for its peremptory challenges and the court ruled, in part, on the ultimate question of intentional discrimination. *See Hernandez v. New York*, 500 U.S. 352, 359, 111 S.Ct. 1859, 1866, 114 L.Ed.2d 395 (1991)(plurality opinion)(holding that once prosecutor makes race-neutral explanation for peremptory challenge and trial court rules on question of intentional discrimination, issue of prima facie case becomes moot); *Gilchrist v. State*, 340 Md. 606, 628, 667 A.2d 876, 886 (1995)(same).

We turn to step two under *Batson* to consider whether the State's reasons for striking jurors Ashe and Smith were inherently discriminatory as a matter of law. We hold that the prosecutor offered race-neutral explanations at step two for striking jurors Ashe and Smith; therefore, the trial court proceeded properly to step three of the analysis.

A neutral explanation has been defined as "an explanation based on something other than the race of the juror. Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race-neutral." *Hernandez*, 500 U.S. at 360, 111 S.Ct. at 1866, 114 L.Ed.2d 395 (plurality opinion). The question presented is the facial validity of the reasons offered by the State. Whether a reason is persuasive is not relevant at this stage of the inquiry. *See Purkett v. Elem*, 514 U.S. 765, 767–68, 115 S.Ct. 1769, 1771, 131 L.Ed.2d 834 (1995). The prosecutor's burden of production under step two is limited. The State had to produce a race-neutral reason, not a believable one. *Id.* at 768–69, 115 S.Ct. at 1771, 131 L.Ed.2d 834. A trial court meets its obligation under step two by requiring the proponent of the strike to offer a race-neutral explanation for the peremptory challenge.

■ Petitioner contends that the State's reason for exercising peremptory challenges against jurors Ashe and Smith is inherently discriminatory and therefore not facially valid and race-neutral. The prosecutor challenged jurors Ashe and Smith because they each had a relative who had been convicted of a crime.[10] On its face, this reason is race-neutral. Striking venirepersons who have been convicted of crimes or whose relatives have been convicted of crimes is not inherently discriminatory.

Courts throughout the country have accepted as race-neutral reasons the fact that a venireperson's relative has been convicted of a crime. *See, e.g., Devoil–El v. Groose,* 160 F.3d 1184, 1186–87 (8th Cir.1998); *Gibson v. Bowersox,* 78 F.3d 372, 373–74 (8th Cir.1996); *United States v. Johnson,* 941 F.2d 1102, 1109 (10th Cir.1991); *United States v. Bennett,* 928 F.2d 1548, 1551 (11th Cir.1991); *United States v. Valley,* 928 F.2d 130, 136 (5th Cir.1991); *United States v. Vaccaro,* 816 F.2d 443, 457 (9th Cir.1987); *United States ex rel. Rice v. Washington,* 987 F.Supp. 659, 660–61 (N.D.Ill.1997); *Ex parte Dunaway,* 746 So.2d 1042, 1046 (Ala.1999); *Lewis v. State,* 741 So.2d 452, 456 (Ala.Crim.App.1999); *Sanford v. State,* 331 Ark. 334, 962 S.W.2d 335, 344 (1998); *People v. Gutierrez,* 28 Cal.4th 1083, 124 Cal.Rptr.2d 373, 52 P.3d 572, 596 (2002); *Davis v. State,* 263 Ga. 5, 426 S.E.2d 844, 847–48 (1993); *People v. Hooper,* 133 Ill.2d 469, 142 Ill.Dec. 93, 552 N.E.2d 684, 700 (1989); *State v. Scott,* 493 N.W.2d 546, 549 (Minn. 1992); *Magee v. State,* 720 So.2d 186, 188–89 (Miss.1998); *People v. Dabbs,* 192 A.D.2d 932, 596 N.Y.S.2d 893, 895 (N.Y.App.Div.1993); *Commonwealth v. Rico,* 551 Pa. 526, 711 A.2d 990, 993 (1998); *Buhl v. State,* 960 S.W.2d 927, 934–35 (Tex.Ct.App.1998).

Our research has uncovered no court that has held as inherently discriminatory a peremptory strike based on a juror having a relative convicted of a crime. A criminal

---

10. The prosecutor said that he struck Ashe because her sister had been convicted of a drug offense and that he struck Smith because her nephew had been convicted of attempted murder.

conviction or having a relative convicted of a crime is not a "characteristic" peculiar to any race. *See Purkett*, 514 U.S. at 769, 115 S.Ct. at 1771, 131 L.Ed.2d 834. Although striking jurors whose relatives have criminal records may produce a disparate impact on one racial group as opposed to another, disparate impact is not conclusive at step two of the *Batson* inquiry. *See Hernandez*, 500 U.S. at 362, 111 S.Ct. at 1867, 114 L.Ed.2d 395 (plurality opinion)(noting that principle of race neutrality not violated unless the government intended to cause the discriminatory impact).

In *Hernandez*, the petitioner argued that the prosecutor's basis for exercising peremptory challenges against two bilingual jurors was inherently discriminatory under *Batson's* step two. *Id.* at 359–60, 111 S.Ct. at 1866, 114 L.Ed.2d 395. The Court held that the prosecutor's reason for striking the jurors—that the bilingual jurors might have difficulty accepting the translator's rendition of Spanish-language testimony— was race-neutral. *Id.* at 361, 111 S.Ct. at 1867, 114 L.Ed.2d 395. In doing so, the Court reasoned that even though the prosecutor's criterion might result in the disproportionate removal of Latino jurors, disproportionate impact on one racial group did not render the prosecutor's actions a *per se* equal protection violation. *Id.*, at 361, 111 S.Ct. at 1867, 114 L.Ed.2d 395. Disparate impact should be weighed at step three when the court assesses whether the prosecutor acted with discriminatory intent, but disparate impact alone does not render a reason inherently discriminatory at step two. *Id.* at 362, 111 S.Ct. at 1868, 114 L.Ed.2d 395.

We find no merit in petitioner's argument that the timing of the prosecutor's stated reasons for his challenges somehow proves that his explanation was inherently discriminatory. Petitioner argues that the prosecutor's policy of striking people whose relatives had been convicted of a crime exhibits an inherently discriminatory intent because the prosecutor announced the policy after voir dire and during the jury selection process, when he was aware that the policy would have a greater impact on African–American venirepersons.

■■ Unless challenged, a proponent of a peremptory challenge need not offer any explanation. *See Swain v. Alabama,* 380 U.S. 202, 212–21, 85 S.Ct. 824, 831–36, 13 L.Ed.2d 759 (1965)(discussing the history of peremptory strikes and strikes for cause). The prosecutor did not have to proffer *any* reason for the exercise of the peremptory challenges until petitioner's *Batson* challenge. Moreover, no explanation was due until the judge ruled as to whether petitioner made a prima facie showing of intentional discrimination. In *Hernandez,* Justice O'Connor stated:

> "Absent intentional discrimination violative of the Equal Protection Clause, parties should be free to exercise their peremptory strikes for any reason, or no reason at all. The peremptory challenge is, 'as Blackstone says, an arbitrary and capricious right; and it must be exercised with full freedom, or it fails of its full purpose.' "

500 U.S. at 374, 111 S.Ct. at 1874, 114 L.Ed.2d 395 (O'Connor, J., concurring)(quoting *Lewis v. United States,* 146 U.S. 370, 378, 13 S.Ct. 136, 139, 36 L.Ed. 1011 (1892)). The prosecutor's announcement of his criterion for exercising peremptories after voir dire was not inappropriate and does not suggest a discriminatory intent.

Finally under step two, petitioner argues that a uniform policy that does not relate to the circumstances of the case or the qualifications of the particular juror is presumptively discriminatory in intent. We disagree.

In *Harley v. State,* 341 Md. 395, 398, 671 A.2d 15, 16 (1996), the prosecutor told the court that she had a "general rule" of challenging jurors who were single and under thirty, a policy with no apparent connection to the circumstances of the case or the individual jurors. The prosecutor explained that she preferred to seat jurors over thirty years old and married because she believed that jurors with those characteristics were more stable and therefore more state-oriented. *See id.* at 402, 671 A.2d at 19. The trial court found the prosecutor's explanation race-neutral and non-pretextual. We affirmed,

holding that we "cannot conclude that the trial judge's findings were clearly erroneous." *Id.* at 404, 671 A.2d at 19.

Petitioner relies on *United States v. Bishop*, 959 F.2d 820 (9th Cir.1992), to support his argument that uniform policies not tied to the particular circumstances of the case are inherently discriminatory. Bishop was indicted on narcotic trafficking charges. The prosecutor exercised a peremptory challenge to strike a black woman based primarily on her residence in a poor and high-crime community. He stated that she was "likely to take the side of those who are having a tough time, aren't upper middle class, and probably believes that police in Compton in South Central L.A. pick on black people." *Id.* at 822. The United States Court of Appeals for the Ninth Circuit found that "the invocation of residence both reflected and conveyed deeply ingrained and pernicious stereotypes" and, as such, was used as a surrogate for race in violation of the Equal Protection Clause. *Id.* at 825, 826. The court rejected the prosecutor's reason as inherently discriminatory. The court held that the exercise of the peremptory strike denied equal protection because it was based on racial stereotypes, not because of any uniform policy.[11]

Contrary to petitioner's position, *Bishop* does not stand for the proposition that it is impermissible to exercise a peremptory challenge based on a uniform policy or general rule. Excluding a juror on the basis of a uniform policy is inherently discriminatory and impermissible if the reason proffered is a surrogate for race.[12] The *Bishop* court, finding residence to be a surrogate for race, stated:

---

**11.** *Bishop* was decided prior to *Purkett v. Elem*, 514 U.S. 765, 115 S.Ct. 1769, 131 L.Ed.2d 834 (1995).

**12.** The court said:

"Residence, as it were, often acts as an ethnic badge. As study after study has showed, residence, especially in urban centers, can be the most accurate predictor of race—more accurate, indeed, than social class."

*United States v. Bishop*, 959 F.2d 820, 828 (9th Cir.1992).

"The difference between *Hernandez* [500 U.S. 352, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991) ], *Mitchell* [877 F.2d 294 (4th Cir.1989) ] and *Briscoe* [896 F.2d 1476 (7th Cir.1990) ] on the one hand, and the present case on the other, is the difference between a reason—whether valid or not—and a racial stereotype. It is the difference between a criterion having a discriminatory racial impact, and one acting as a discriminatory racial proxy. It is, in short, the difference between what the Constitution permits, and what it does not."

*Id.* at 826. A uniform policy may be facially race-neutral as long as it is not a mere proxy for race. Excusing a juror who has a relative with a criminal conviction is not a surrogate for race and thus is not an inherently discriminatory basis for a peremptory challenge. Concerns regarding the existence or application of a uniform policy for striking jurors may be relevant to a court's assessment of credibility under step three, but such considerations do not render an explanation *per se* invalid at step two.

We next address step three and petitioner's argument that because the trial court found the reasons for striking jurors Nelson, Ashe, and Smith to be pretextual under *Batson's* step three, the trial court failed to remedy the harm by reseating only juror Nelson. Petitioner argues that the proper remedy for the *Batson* violation is a new trial. The State contends that the trial court implicitly found no *Batson* violation as to jurors Ashe and Smith and that the court properly remedied the impermissible removal of Nelson.

 We have perused the record thoroughly and cannot conclude that the trial judge properly fulfilled his obligations under *Batson*. The trial court made a determination only as to juror Nelson. The judge never made a determination, as he was required to do under step three, with respect to jurors Ashe and Smith.[13]

---

13. Sometimes the record is adequate for a reviewing court to find that the trial judge *implicitly* ruled on the pretextuality of a proffered race-

 The trial court explicitly discredited the State's explanation for striking Nelson. The judge rejected the "misidentification" explanation and seated Nelson as a juror in the case. Because of the deference due this factual finding, we hold that the trial court was not clearly erroneous.

As to jurors Ashe and Smith, we cannot tell from this record whether the trial court believed the prosecutor's explanations. At one point during jury selection the court stated: "I don't buy the State's position that they're going to strike people who some distant cousin had been the victim of crime, when they came up here and told me that they had no problem being fair. I don't buy it." Later, he appeared to find the prosecutor's explanation plausible: "It's not that you couldn't consider other family [and their criminal records]. I don't have any problem with that. I can understand under some circumstances where that would be perfectly legitimate." Because of the judge's inconsistent comments, it is unclear whether the trial court found the prosecutor's explanation credible.

 The record is unclear as to what, if anything, the trial judge may have ruled with respect to jurors Ashe and Smith. We cannot conclude that the judge implicitly found the prosecutor's strikes of those two challenged jurors to be

---

neutral reason. An implicit finding may be acceptable if it is apparent from the record that the court found the reason to be nondiscriminatory. *See, e.g., State v. Cañez,* 202 Ariz. 133, 42 P.3d 564, 578 (2002)(en banc)(deferring to trial court's implicit finding of no *Batson* violation); *State v. Shanks,* 809 S.W.2d 413, 415–16 (Mo.Ct.App.1991)(noting that, even though the trial court made no express findings, the record was sufficient to evaluate the court's implicit finding regarding the neutrality of the proffered explanation); *State v. Smith,* 791 S.W.2d 744, 750 (Mo.Ct.App.1990)(stating that although the trial judge failed to make explicit findings in support of denial of defendant's *Batson's* claim, record is sufficient to support judge's implicit finding that defendant failed to make a prima facie case and would be sufficient for a finding of nonpretextuality); *People v. Turner,* 294 A.D.2d 192, 743 N.Y.S.2d 78, 79 (N.Y.App.Div.2002)(holding that the record supports the trial judge's implicit finding of nonpretextuality); *Broden v. State,* 923 S.W.2d 183, 186 (Tex.Ct.App.1996)(noting that trial court's finding of no discrimination may not be overturned unless actual or implicit finding is clearly wrong). This case, however, does not present one of those situations.

race-neutral. "The credibility of an attorney offering a race-neutral explanation is at the very heart of [the *Batson*] analysis." *Barnes v. Anderson,* 202 F.3d 150, 157 (2d Cir. 1999). However difficult it may be, before ruling on a *Batson* motion, a trial court has an obligation under *Batson's* step three to evaluate the credibility of the race-neutral reasons offered by the lawyer and rule on purposeful discrimination for each challenged juror.[14] *Galarza v. Keane,* 252 F.3d 630, 639 (2d Cir.2001); *Jordan v. Lefevre,* 206 F.3d 196, 200 (2d Cir.2000). Although some *Batson* steps are susceptible to resolution by an appellate court, see, for example, *State v. Donaghy,* 171 Vt. 435, 769 A.2d 10, 12 (2000)(step one), *Purkett,* 514 U.S. at 769, 115 S.Ct. at 1771, 131 L.Ed.2d 834 (step two), on this record, we are not prepared to conduct the important factual analysis required under step three. *Batson's* final step is essentially a credibility assessment, and the parties are not before this Court to permit us to judge their credibility or to explore the validity of any arguments they may advance. We hold that the trial court failed to conduct a proper *Batson* analysis by not making a final determination regarding the credibility of the prosecutor's race-neutral explanations and therefore whether petitioner established purposeful discrimination in the strikes of jurors Ashe and Smith.

We turn next to the remedy. A trial court *Batson* error does not *ipso facto* entitle a party to a new trial. Under the circumstances presented in the instant case, remand to the trial court is the appropriate remedy. This Court has determined previously that unless it is impossible to reconstruct the circumstances surrounding the peremptory challenges, due

---

**14.** Our holding should not be read as requiring specific words to satisfy *Batson. See Galarza v. Keane,* 252 F.3d 630, 640 n. 10 (2d Cir.2001)(noting that the ruling on appeal may well have been different if the trial court's review of the *Batson* challenges "culminated in a general crediting of the prosecutor's race-neutral explanations or possibly even if the trial court had merely stated that it rejected each of Galarza's *Batson* claims"). The trial court does need, however, to make an ultimate finding of whether petitioner has established purposeful discrimination and then to make a final ruling on the *Batson* motion.

perhaps to the passage of time or the unavailability of the trial judge, the proper remedy where the trial court does not satisfy *Batson's* requirements is a new *Batson* hearing in which the trial court must satisfy the three-step process mandated. by that case and its progeny. A limited remand was the procedure followed in *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), *Mejia v. State,* 328 Md. 522, 616 A.2d 356 (1992), *State v. Gorman,* 324 Md. 124, 596 A.2d 629 (1991), and *Stanley v. State,* 313 Md. 50, 542 A.2d 1267 (1988). Although a limited remand may not always be practical, in this case neither the passage of time nor any other factor appears to limit the ability of the trial judge to conduct the *Batson* analysis.

In *Mejia,* the trial court failed to fulfill its obligations under *Batson.* The trial judge made no specific findings and did not explain his ruling against Mejia. On appeal, we found that Mejia had made a prima facie case of purposeful discrimination. We noted that a new trial may be warranted if "there is no reasonable possibility that the circumstances surrounding the striking [of a juror] can be reconstructed fairly." *Mejia,* 328 Md. at 541, 616 A.2d at 365. Writing for the Court, Judge Bell, now Chief Judge, stated that a limited remand to the trial court, following the procedure set out in *Stanley,* was the proper remedy under the circumstances. *Mejia,* 328 Md. at 541, 616 A.2d at 365. In *Stanley,* following the course set out by other courts in the country, we reasoned:

"One possibility, obviously, is to set aside Stanley's conviction by an arguably tainted jury, and to order a new trial. Quite understandably, that is the relief Stanley seeks. Another possibility is a limited remand under Rule [8–604], to permit the State to provide, if it can, racially neutral reasons for its use of peremptories. A Rule [8–604] remand may be appropriate 'to correct procedures subsidiary to the criminal trial, [but] it can never be utilized to rectify prejudicial errors committed during the trial itself.' Here, the peremptory strikes were exercised before the jury was sworn, and thus before the beginning of the trial on the

merits. Moreover, limited remand was the remedy applied in *Batson*."

313 Md. at 75–76, 542 A.2d at 1279 (footnote and citations omitted).

A limited remand ordinarily is the remedy applied by appellate courts throughout this country when a trial court fails to conduct a proper *Batson* analysis. *See, e.g., Batson,* 476 U.S. at 100, 106 S.Ct. at 1725, 90 L.Ed.2d 69; *Mejia,* 328 Md. at 540–41, 616 A.2d at 364–65; *Gorman,* 324 Md. at 129–32, 596 A.2d at 631–33; *Stanley,* 313 Md. at 75–77, 542 A.2d at 1279–80; *Galarza,* 252 F.3d at 640–41; *Jordan,* 206 F.3d at 202; *Barnes,* 202 F.3d at 156–57; *Jones v. Plaster,* 57 F.3d 417, 421–22 (4th Cir.1995); *United States v. Joe,* 928 F.2d 99, 103–04 (4th Cir.1991); *United States v. Alvarado,* 923 F.2d 253, 256 (2d Cir.1991); *United States v. Romero–Reyna,* 867 F.2d 834, 838 (5th Cir.1989); *United States v. Hughes,* 864 F.2d 78, 80–81 (8th Cir.1988); *United States v. Chalan,* 812 F.2d 1302, 1314 (10th Cir.1987); *Arnold v. State,* 668 So.2d 109, 111 (Ala.Crim.App.1995); *People v. Trujillo,* 15 P.3d 1104, 1106 (Colo.Ct.App.2000); *State v. Robinson,* 237 Conn. 238, 676 A.2d 384, 391 (1996); *State v. Bolton,* 271 Kan. 538, 23 P.3d 824, 828–29 (2001); *State v. Givens,* 776 So.2d 443, 451 (La.2001); *Donaghy,* 769 A.2d at 16–17.

Accordingly, pursuant to Rule 8–604,[15] we remand this case to the Circuit Court for Baltimore County to make a determination whether the prosecutor's race-neutral reasons were pretextual and therefore whether petitioner has met his burden of proving purposeful discrimination as to jurors Ashe and

---

**15.** Maryland Rule 8–604, in relevant part, provides as follows:

"If the Court concludes that the substantial merits of a case will not be determined by affirming, reversing or modifying the judgment, or that justice will be served by permitting further proceedings, the Court may remand the case to a lower court. In the order remanding a case, the appellate court shall state the purpose for the remand. The order of remand and the opinion upon which the order is based are conclusive as to the points decided. Upon remand, the lower court shall conduct any further proceedings necessary to determine the action in accordance with the opinion and order of the appellate court."

Smith. If the court cannot effectively do so, or finds purposeful discrimination, it shall order a new trial.

*JUDGMENT OF THE COURT OF SPECIAL APPEALS VACATED. CASE REMANDED TO THAT COURT WITH DIRECTIONS TO REMAND THE CASE TO THE CIRCUIT COURT FOR BALTIMORE COUNTY FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO ABIDE BY THE RESULT.*