*Mashea Ray-Simmons & Antionette McGouldrick v. State*, No. 28, September Term, 2015

**CRIMINAL LAW — PEREMPTORY CHALLENGES —** The State's explanation of its reasons for exercising peremptory challenges constituted a *Batson* step two discussion, rendering moot the question of whether Petitioners established a prima facie case of discrimination. The prosecutor's remark that she intended to replace a challenged juror with another juror of the same race and gender, moreover, did not constitute a race- and gender-neutral explanation under *Batson*.

Circuit Court for Baltimore City
Case No. 110308026; Case No. 110308027;
Case No. 110293019; Case No. 110293021
Argued:  November 6, 2015

IN THE COURT OF APPEALS
OF MARYLAND

No. 28

September Term, 2015

MASHEA LOUISE RAY-SIMMONS
A/K/A TAYANA SIMMONS AND
ANTIONETTE MCGOULDRICK

v.

STATE OF MARYLAND

Barbera, C.J.,
Battaglia
Greene
Adkins
McDonald
Watts
Harrell, Jr., Glenn T. (Retired,
Specially Assigned),

JJ.

Opinion by Barbera, C.J.
McDonald, J., dissents.

Filed:  February 22, 2016

We apply in this case *Batson v. Kentucky*, 476 U.S. 79 (1986), and its progeny to the State's exercise of peremptory challenges and its subsequent explanations for making those challenges. We hold that, because the State's explanation for one of its peremptory challenges was not neutral as to both race and gender, Petitioners are entitled to relief under *Batson*. We accordingly reverse the decision of the Court of Special Appeals and grant Petitioners a new trial.

## I.

Petitioners, Mashea Ray-Simmons and Antionette McGouldrick, were tried jointly with a third co-defendant before a jury in the Circuit Court for Baltimore City on charges of first degree murder, conspiracy to commit murder, and related handgun offenses. Trial proceeded over the course of eight days in April 2012. Petitioners were acquitted of first degree murder but were found guilty and sentenced for second degree murder, conspiracy to commit murder, and use of a handgun in the commission of a crime of violence. The Court of Special Appeals affirmed Petitioners' convictions in an unreported opinion. We granted Petitioners' petition for writ of certiorari to answer the following question:

> Does a prosecutor's response to an allegation of racial and gender discrimination in the exercise of a peremptory challenge that she intended to replace the stricken African American male juror with another African American male satisfy the requirement of *Batson v. Kentucky*, that the State a) provide a specific explanation for each challenged strike, which b) is racially, and with respect to gender, neutral?

## II.

*Batson* and its progeny instruct that the exercise of peremptory challenges on the basis of race, gender, or ethnicity violates the Equal Protection Clause of the Fourteenth

Amendment.[1]  Excusing a juror on any of those bases violates both the defendant's right to a fair trial and the potential juror's "right not to be excluded on an impermissible discriminatory basis." *Edmonds v. State*, 372 Md. 314, 329 (2002).  Moreover, when the striking party's "choice of jurors is tainted with racial bias, that overt wrong casts doubt over the obligation of the parties, the jury, and indeed the court to adhere to the law throughout the trial, invit[ing] cynicism respecting the jury's neutrality and undermin[ing] public confidence in adjudication."  *Miller-El v. Dretke*, 545 U.S. 231, 238 (2005) (citations, internal quotation marks, and ellipses omitted).

The Supreme Court announced in *Batson* a three-step process to assist the trial court in deciding a claim that a party to the case exercised a peremptory challenge to eliminate a prospective juror based on his or her race, gender, or ethnicity.  The Supreme Court has hewed to that process ever since *Batson* and has clarified how trial courts are to employ the process and appellate courts are to review trial courts' decisions.  The Supreme Court has emphasized that, throughout the process of evaluating such claims, "[t]he trial court has a pivotal role." *Snyder v. Louisiana*, 552 U.S. 472, 477 (2008).

At step one, the party raising the *Batson* challenge must make a prima facie showing—produce some evidence—that the opposing party's peremptory challenge to a prospective juror was exercised on one or more of the constitutionally prohibited bases. *See Purkett v. Elem*, 514 U.S. 765, 767 (1995) (per curiam).  "[T]he prima facie showing

---

[1] *See Batson v. Kentucky*, 476 U.S. 79, 89 (1986) (prohibiting challenges based on race); *Hernandez v. New York*, 500 U.S. 352, 369 (1991) (plurality opinion) (indicating that challenges based on ethnicity are prohibited); *J.E.B. v. Alabama ex rel. T.B.*, 511 U.S. 127, 130-31 (1994) (prohibiting challenges based on gender).

threshold is not an extremely high one—not an onerous burden to establish." *Stanley v. State*, 313 Md. 50, 71 (1988). A prima facie case is established if the opponent of the peremptory strike(s) can show "that the totality of the relevant facts gives rise to an inference of discriminatory purpose." *Johnson v. California*, 545 U.S. 162, 168 (2005) (internal quotation marks omitted). Merely "a 'pattern' of strikes against black jurors in the particular venire . . . might give rise to or support or refute the requisite showing." *Stanley*, 313 Md. at 60-61 (citing *Batson*, 476 U.S. at 97).

If the objecting party satisfies that preliminary burden, the court proceeds to step two, at which "the burden of production shifts to the proponent of the strike to come forward with" an explanation for the strike that is neutral as to race, gender, and ethnicity. *Purkett*, 514 U.S. at 767. A step-two explanation must be neutral, "but it does not have to be persuasive or plausible. Any reason offered will be deemed race-neutral unless a discriminatory intent is inherent in the explanation." *Edmonds*, 372 Md. at 330 (citation omitted). "At this step of the inquiry, the issue is the facial validity of the prosecutor's explanation." *Hernandez v. New York*, 500 U.S. 352, 360 (1991) (plurality opinion). The proponent of the strike cannot succeed at step two "by merely denying that he had a discriminatory motive or by merely affirming his good faith." *Purkett*, 514 U.S. at 769. Rather, "[a]lthough there may be any number of bases on which a prosecutor reasonably might believe that it is desirable to strike a juror who is not excusable for cause," the striking party "must give a clear and reasonably specific explanation of his legitimate reasons for exercising the challenge." *Miller-El*, 545 U.S. at 239 (alterations omitted); *Stanley*, 313 Md. at 61 (quoting *Batson*, 476 U.S. at 98 n.20).

3

If a neutral explanation is tendered by the proponent of the strike, the trial court proceeds to step three, at which the court must decide "whether the opponent of the strike has proved purposeful racial discrimination." *Purkett*, 514 U.S. at 767. "It is not until the third step that the persuasiveness of the justification becomes relevant—the step in which the trial court determines whether the opponent of the strike has carried his burden of proving purposeful discrimination." *Johnson*, 545 U.S. at 171 (quoting *Purkett*, 514 U.S. at 768) (emphasis omitted); *see also Edmonds*, 372 Md. at 330. At this step, "the trial court must evaluate not only whether the [striking party's] demeanor belies a discriminatory intent, but also whether the juror's demeanor can credibly be said to have exhibited the basis for the strike attributed to the juror by the [striking party]." *Snyder*, 552 U.S. at 477. Because a *Batson* challenge is largely a factual question, a trial court's decision in this regard is afforded great deference and will only be reversed if it is clearly erroneous. *Edmonds*, 372 Md. at 331.

Relevant to this case, the question of whether the challenger has made a prima facie case under step one becomes moot if the striking party offers an explanation for the challenged strike. *See id.* at 332 (citing *Hernandez*, 500 U.S. at 359) (holding that "whether petitioner has made a prima facie showing that the State's challenges were racially motivated . . . is moot because the State offered explanations for its peremptory challenges and the court ruled, in part, on the ultimate question of intentional discrimination"); *Davis v. Balt. Gas & Elec. Co.*, 160 F.3d 1023, 1027 (4th Cir. 1998) (holding that "whether the party disputing the peremptory strikes has established a prima facie case of discrimination is moot, since Defendant voluntarily offered racially neutral reasons for its strikes"). "The

4

effect of a prima facie case of racial or gender discrimination is to shift the burden of production to the party exercising the strike to offer a race or gender-neutral explanation. Once a [race- and gender-neutral] explanation is offered, the prima facie case dissipates[.]" *Gilchrist v. State*, 340 Md. 606, 634 (1995) (Chasanow, J., concurring).

It is against this backdrop that we determine whether the trial court correctly applied the *Batson* process. Before doing so, however, we must resolve a preliminary matter that requires our examination of what occurred before and during the process of selecting the jury.

III.

On March 28, 2012, on what, save for a postponement, evidently was to have been the first day of jury selection, Ms. McGouldrick's counsel requested a "ruling that an objection made by one defendant would be deemed made by the others." The trial court responded, "That's fine. All objections are preserved." During jury selection on April 9, 2012, the State initially exercised peremptory challenges to excuse Juror 4579 and Juror 4692, both of whom are African American men. When twelve jurors were seated, the trial court asked the State if the panel was acceptable. At that point, the State asked to excuse Juror 4583, another African American man who had not answered any questions during voir dire. As counsel continued their attempt to seat a twelfth juror, the State exercised two additional peremptory challenges of African American men, Juror 4773 and Juror 4909.

Upon the State's exercise of its fifth peremptory challenge to excuse Juror 4909, counsel for Petitioner Ray-Simmons asked to approach the bench. The following colloquy

5

occurred between the trial court, Ms. Ray-Simmons's counsel, and the State, with counsel

for the remaining defendants also present at the bench:

[DEFENSE COUNSEL]: On behalf of Defendant Ray-Simmons, Your Honor, the State has stricken – made five peremptory strikes; all five of them black, all five of them male. All five of them are no[t] educated and with all [due] respect, there seems to be very little other cause for striking. I think that it's inappropriate.

THE COURT: All right. [State]?

[THE STATE]: Your Honor, as to 4909, the State struck him because of his age. As to 4773, that man appeared to have a real issue with numbers. He either wasn't here this morning when his number was called or just doesn't – he just appeared to have some issues with that.

*As to 4583, I intended to replace him with another black male. Defense, I believe it was two*[2] *actually, ended up striking that person.*

. . . .

As to 4692 - . . . His brother was convicted of CDS and he was unemployed. As to 4579 he's also young.

THE COURT: Okay. All right.

[THE STATE]: I intend to strike more that would also be young.

THE COURT: That's fine. Noted. *I don't think it would be used to establish a prima facie case.* Thank you.

---

[2] For purposes of jury selection, defense counsel were designated, respectively, as Defense One (Defendant Warren Savage, the remaining codefendant who is not a party to this appeal), Defense Two (Defendant Ray-Simmons), and Defense Three (Defendant McGouldrick).

6

[DEFENSE COUNSEL]: Okay.

(Emphasis added). Jury selection resumed. When again twelve jurors were seated, the trial court asked counsel for Ms. Ray-Simmons if the panel was acceptable to his client, to which he replied "Acceptable." Then, in response to the same question, counsel for Ms. McGouldrick answered, "Acceptable, safe from [sic][3] prior objections, Your Honor." Two alternates were chosen without further controversy and the trial proceeded.

IV.

In its unreported opinion in this case, a panel of the Court of Special Appeals held as a preliminary matter, without mention of the trial court's March 28, 2012, ruling, that neither Petitioner had preserved the *Batson* claim for appellate review because both had accepted the composition of the jury at the close of jury selection. The panel nonetheless addressed the *Batson* claim and held, in the alternative, that the trial court had not erred in ruling that the claim failed for want of a prima facie case of discrimination and that the prosecutor's explanation was race- and (presumably) gender-neutral. Petitioners asked this Court to accept certiorari to review not only the Court of Special Appeals's holding on the merits of their *Batson* claim, but also the intermediate appellate court's preliminary determination that Petitioners had not preserved the claim for appellate review. The State, not surprisingly, agreed with the Court of Special Appeals on both grounds. The State later noted in its brief before this Court that our decision on the merits of the *Batson* claim would be advisory because it would leave standing the Court of Special Appeals's threshold

---

[3] We strongly suspect that counsel used the phrase "save for" rather than "safe from."

holding on non-preservation grounds. Notwithstanding that we denied certiorari on the question of preservation, we deem it appropriate to address it to lay to rest any concern that this be merely an advisory opinion. Upon our review of the record, it is clear to us that the *Batson* claim was properly preserved by both Petitioners.

Based upon the trial court's ruling at the outset of trial proceedings that "an objection made by one defendant would be deemed made by the others," the *Batson* challenge raised expressly by counsel for Ms. Ray-Simmons was joined automatically by counsel for Ms. McGouldrick. Likewise, when at the end of jury selection counsel for Ms. McGouldrick stated that the jury was acceptable "safe from [sic] prior objections," counsel for Ms. McGouldrick preserved the *Batson* challenge for his client as well as Ms. Ray-Simmons. It is of no consequence, therefore, that counsel for Ms. Ray-Simmons accepted the composition of the jury without repeating his prior objection.[4]

---

[4] The dissent declares that we are engaging in a "sleight of hand" in concluding that both Petitioners have preserved the *Batson* challenge for appellate review because the trial court ruled on March 28, 2012, that an objection made by one defense counsel "would be deemed made by the others." In the view of the dissent, the court's ruling was limited to the pretrial motions that occurred later that day. We disagree.

Certainly, as the dissent points out, pretrial motions were litigated later that day. But the ruling concerning preservation of objections was made earlier, in the context of a discussion among the trial court and all counsel concerning the general ground rules that would apply throughout trial. We come to this conclusion by reference to other rulings the court made that same morning. The trial court stated at the outset of the proceedings that "it's my understanding[] that we are here to begin trial in this case." The court then turned to a discussion with counsel about the trial schedule, including how many days the trial would take and at what times the proceedings would start and finish. The court next issued a rule on witnesses, requiring that all witnesses who would be testifying must stay outside of the courtroom, which we have little doubt was intended to apply throughout trial and was not limited to pretrial motions. Similarly, the court ruled that members of the audience who could not contain their emotions would be removed from the courtroom; that ruling, too, cannot reasonably be interpreted as applying solely to pretrial motions on evidentiary

8

In a prior criminal case involving codefendants, we noted without contradiction one commentator's observation that, in cases involving codefendants, "[u]nless the identity and/or status of the objecting party is a factor in the trial judge's decision to overrule the objection, any counsel's objection really should be allowed to preserve the issue, at least for all similarly situated parties." *Bundy v. State*, 334 Md. 131, 146 (1994) (quoting Joseph F. Murphy, Jr., *Maryland Evidence Handbook* § 102(C), at 13 (2d ed. 1993)). The State's exercise of peremptory challenges affected Ms. Ray-Simmons no more prominently than Ms. McGouldrick. Indeed, a claim that the State is exercising its peremptory challenges on the basis of race and gender implicates not only the parties to the case, but also the jurors who were stricken on a discriminatory basis and the public's perception generally of our system of justice. These are the very concerns underpinning the *Batson* decision that bring us here today. *See Miller-El*, 545 U.S. at 238. Taking together Ms. Ray-Simmons's objection and Ms. McGouldrick's preservation of that objection, given the trial court's earlier ruling, we hold that both Petitioners preserved for appellate review their challenge

---

issues. The court also confirmed that counsel had secured an order that would allow their clients to wear civilian clothing. That concern, of course, does not arise in the context of pretrial motions litigated before a jury is sworn.

Of particular note is that, moments prior to the ruling at issue, the trial court explained its expectations regarding objections made during trial. The court stated, "All right. Counsel, with regard to objections; objections to a certain extent should be limited to one or two or three word objections." The court explained that: "I just hate to have the trial continually be delayed by approaching." Shortly thereafter, counsel for Ms. McGouldrick raised the request for a ruling in favor of joint objections as a "housekeeping matter" made "[i]n terms of the Court's policy regarding objections." Viewed in that context, counsel's request was part of the same discussion as the court's expectations towards objections generally, and was not limited to the pretrial motions the court entertained that day.

9

to the State's peremptory challenges. We therefore reverse the Court of Special Appeals's holding to the contrary.

V.

We turn now to Petitioners' challenge to the trial court's *Batson* ruling. Their argument has several prongs. They argue that the court, by calling upon the State to explain its peremptory strikes, rendered moot the question of whether Petitioners had carried their preliminary burden of making out a prima facie case; even so, Petitioners had satisfied their burden of producing evidence of discrimination in the State's exercising all five strikes—the only strikes the State had made by that point of jury selection—to remove African American men from the jury. Petitioners further argue that the prosecutor's explanation for striking Juror 4583 violated the dictates of *Batson* because the explanation lacked the requisite specificity and on its face was based on the juror's race and gender. We agree with Petitioners on all scores.

(a)

The preliminary "step one" determination of whether the objecting party has made out a prima facie case of a *Batson* violation becomes moot when the striking party tenders an explanation for the challenged peremptory strike(s). *Hernandez*, 500 U.S. at 359; *Davis*, 160 F.3d at 1027; *Edmonds*, 372 Md. at 332. When in this case Petitioners asserted a *Batson* violation, the court turned its attention to the prosecutor, who immediately provided an explanation for each of the five peremptory strikes. If, in calling upon the State to respond, the trial court was looking to the State merely to address Petitioners' showing of a prima facie case, the court erred as a matter of law. "What reasons a prosecutor may

10

advance for his challenges are not relevant to a prima facie showing *vel non*. It is the 'circumstances' concerning the prosecutor's use of peremptory challenges which may create a prima facie case of discrimination against black jurors, not the reasons given for the challenges." *Tolbert v. State*, 315 Md. 13, 18 (1989).

The prosecutor explained that she excused Juror 4909 and Juror 4579 because of their youth; Juror 4773 had an issue with numbers; and Juror 4692 was unemployed and his brother had been convicted of a crime. With regard to Juror 4583, the prosecutor explained only: "I intended to replace him with another black male." Notwithstanding that the court evidently believed the *Batson* inquiry remained at step one, even after the prosecutor's proffered explanations for her strikes, those explanations automatically moved the *Batson* inquiry from the first to the second step. *Edmonds*, 372 Md. at 332.

Furthermore, the record demonstrates that Petitioners satisfied their preliminary burden of producing a prima facie case of race- and gender-based strikes by the State. When Petitioners lodged their *Batson* challenge, the State had exercised five peremptory challenges, all of which were to remove African American men. This evidence sufficed to establish a prima facie case of race and gender discrimination. *See Johnson*, 545 U.S. at 173; *Batson*, 476 U.S. at 97 (noting that a mere "'pattern' of strikes against black jurors included in the particular venire might give rise to an inference of discrimination," thereby satisfying step one); *Stanley*, 313 Md. at 72 (concluding that a prima facie case of racial discrimination was established where "the State used 80 percent of its peremptory challenges (eight of 10 strikes) to strike blacks from the jury panel"). The trial court erred in ruling that Petitioners had not made out a prima facie case of a *Batson* violation.

11

(b)

The State, by proffering an explanation for each of its strikes, moved the *Batson* inquiry to step two. At that step, the State, as the party exercising the challenged peremptory strike, carries the burden of coming forward with "a clear and reasonably specific explanation of its legitimate reasons for exercising the challenge." *Miller-El*, 545 U.S. at 239 (alteration omitted) (quoting *Batson*, 476 U.S. at 98 n.20); *see also Chew v. State*, 317 Md. 233, 245 (1989) (noting that the striking party must provide an explanation for every strike). The State in this case failed to do so.

Petitioners have no quarrel with the State's explanation of its reasons for striking Jurors 4579, 4692, 4773, and 4909; their concern focuses squarely on the State's explanation for challenging Juror 4583. They argue that the prosecutor's proffered explanation that she intended to replace Juror 4583 with another juror of the same race and gender—"I intended to replace him with another black male"—fails to satisfy the requirement of *Batson* that the explanation be "clear and reasonably specific"; moreover, the explanation on its face is race- and gender-based. We agree. A desire to replace a juror with another unspecified member of the panel does not explain in any way, race-neutral or otherwise, the prosecutor's reasons for striking that particular juror. *See State v. Hicks*, 499 S.E.2d 209, 212 (S.C. 1998) (concluding that the defendant failed to comply with *Batson* by explaining that he wanted "to reach some jurors further down the list" because he did not explain "which jurors he was attempting to seat or why other jurors were more desirable" and therefore "[t]he effect was the same as if no reason was given") (internal quotation marks omitted).

12

The State acquiesces on this point, acknowledging that the prosecutor's response vis-à-vis Juror 4583 hardly amounts to an explanation of the reason for striking that prospective juror. Yet, in the State's view, the prosecutor's statement was merely an attempt to dispute Petitioners' prima facie case and did not move the conversation to a step two *Batson* inquiry. We explained in part (a) why that argument fails. Rather, the fact that the State's explanation for striking Juror 4583 was non-responsive establishes that the peremptory strike did not comply with *Batson*. *See Bui v. Haley*, 321 F.3d 1304, 1311-12 (11th Cir. 2003) (concluding that "the State's total failure to present any reason for the striking of the eleventh juror prevented it from rebutting the defendant's prima facie case of race discrimination").

Not only was the prosecutor's explanation insufficiently clear and specific, it was also not race- and gender-neutral. We agree with Petitioners that the prosecutor's apparent intention to replace Juror 4583 with another African American man discloses that race and gender factored improperly into the prosecutor's decision, in violation of *Batson*. In *Tyler v. State*, 330 Md. 261, 267-68 (1993), the prosecutor explained that his reason for striking African American female jurors was not because of their race, but rather because they were women and the prosecutor desired to have more men on the jury. We held, prior to the Supreme Court's decision in *J.E.B. v. Alabama ex rel T.B.*, 511 U.S. 127, 130-31 (1994), that exercising a peremptory challenge on the basis of gender violates Article 24 of the Maryland Declaration of Rights. *Tyler*, 330 Md. at 270. Had *Tyler* been decided today, we have no doubt that an explanation like the one provided by the prosecutor in that case also would run afoul of the *Batson* line of cases. *See also Elliott v. State*, 185 Md. App.

13

692, 719 (2009) (holding that the State's exercise of peremptory challenges against men did not comply with *Batson*—even though the State's intention was to reach a more balanced jury—because the State based its decision on gender).

Decisions of our sister jurisdictions are in accord with our conclusion. *State v. Coleman*, 970 So. 2d 511 (La. 2007), is one such case. The prosecutor in *Coleman* had proffered in response to the defendant's *Batson* challenge that one African American juror "has filed a lawsuit against the city alleging institutional discrimination. Defense counsel voir dired on the race issue. There is a black defendant in this case. There are white victims." *Id.* at 513-14 (footnote omitted). The Supreme Court of Louisiana concluded that this explanation was not race-neutral under *Batson* because the prosecutor "specifically referenc[ed] the race of the defendant and the victim." *Id.* at 516. As a result, "the explicit interjection of race, without further explanation, renders implausible any explanation other than that the decision to strike this prospective juror was not race-neutral." *Id.*; *see also People v. Mallory*, 993 N.Y.S.2d 609, 612 (N.Y. App. Div. 2014) (rejecting the prosecutor's explanation that the stricken juror "believes that police sometimes single out minorities and I have Caucasian police officers that are going to be taking the stand" because "the prosecutor explicitly referenced race in explaining his reasons") (internal quotation marks omitted); *Guzman v. State*, 85 S.W.3d 242, 247 (Tex. Crim. App. 2002) (en banc) (emphasizing that "the fact that a litigant mentions race in his explanation for peremptory challenge is indicative . . . of purposeful discrimination").

We hold that the prosecutor's explanation for striking Juror 4583, in addition to lacking the requisite specificity, violated *Batson* because on its face the explanation was

14

neither race- nor gender-neutral.

V.

It remains for us to decide the remedy to which Petitioners are entitled. Under some circumstances, we have ordered a limited remand after a *Batson* violation instead of a new trial to allow the trial court to complete the three-step inquiry. We noted in *Edmonds* that,

> unless it is impossible to reconstruct the circumstances surrounding the peremptory challenges, due perhaps to the passage of time or the unavailability of the trial judge, the proper remedy where the trial court does not satisfy *Batson's* requirements is a new *Batson* hearing in which the trial court must satisfy the three-step process mandated by that case and its progeny.

372 Md. at 339-40. A limited remand may be appropriate, for example, where the State was not given an opportunity at trial to explain its reasons for exercising the contested peremptory challenges. *See Mejia*, 328 Md. at 540 (ordering a limited remand because less than two years had passed since the trial began and "the State was not given the opportunity to explain its striking of [the challenged juror]"); *Stanley*, 313 Md. at 75-76 (ordering a limited remand "to permit the State to provide, if it can, racially neutral reasons for its use of peremptories"). We also have recognized, however, that "certain difficulties are inherent in attempting to reconstruct events that occurred a year or more earlier." *Chew*, 317 Md. at 239.

We are persuaded that it would be impossible to reconstruct a jury that tried and convicted Petitioners almost four years ago. *See id.* (noting that a new trial is the appropriate remedy for a *Batson* violation when "the passage of time precludes fair consideration of the relevant issues"). Nor is there any legitimate reason for doing so given

15

that the prosecutor explained her reasons for exercising her peremptory challenges. *See Tyler*, 330 Md. at 271 ("In the face of what the prosecutor said at trial, he is not entitled to come forward at this time in an attempt to present a neutral explanation for challenging women jurors. [Petitioners] are entitled to a new trial without further ado."). We therefore conclude that Petitioners are entitled to a new trial.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED; CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO REVERSE THE JUDGMENTS OF CONVICTION AND REMAND THE CASES TO THE CIRCUIT COURT FOR A NEW TRIAL FOR EACH PETITIONER; COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE PAID BY THE MAYOR AND CITY COUNCIL OF BALTIMORE CITY.**

Circuit Court for Baltimore County
Case No. 110308026
Case No. 110308027
Case No. 110293019
Case No. 110293021
Argued: November 6, 2015

IN THE COURT OF APPEALS
OF MARYLAND

No. 28

September Term, 2015

MASHEA LOUISE RAY-SIMMONS
A/K/A TAYANA SIMMONS AND
ANTOINETTE MCGOULDRICK

v.

STATE OF MARYLAND

Barbera, C.J.,
Battaglia
Greene
Adkins
McDonald
Watts
Harrell, Jr., Glenn T.
(Retired, Specially
Assigned),

JJ.

Dissenting Opinion by McDonald, J.

Filed: February 22, 2016

In *Batson v. Kentucky*[1] and subsequent cases, the Supreme Court established an analysis for courts to employ in dealing with an allegation of purposeful racial or gender discrimination in the exercise of peremptory strikes. Key information and data relating to that analysis – the racial and gender make-up of the jury panel, other observable characteristics of the prospective jurors who are struck, and the ultimate composition of the jury selected – may be unknown to an appellate court, but self-evident to the trial judge. Accordingly, the *Batson* analysis relies heavily on the determinations of the trial judge whose findings are to be accorded "great deference" and reversed only if clearly erroneous.[2]

In this case, the Court attempts to apply the *Batson* analysis amid some confusion as to whether one or both Petitioners actually preserved a *Batson* issue and what step of the *Batson* inquiry is being reviewed. Based on my review of the record, I agree with the Court of Special Appeals that, even if a *Batson* issue was preserved, the Circuit Court was not clearly erroneous in finding that the Petitioners did not carry their burden of establishing purposeful discrimination. Moreover, this case illustrates the wisdom of dispensing with peremptory strikes altogether.

---

[1] 476 U.S. 79 (1986).

[2] *E.g., Hernandez v. New York*, 500 U.S. 352, 363-66 (1991); *Batson*, 476 U.S. at 98 n. 21.

**The *Batson* Issue**

*Preservation*

The Court of Special Appeals decided this case primarily on the ground that the Petitioners failed to preserve a *Batson* issue in the trial court. The Majority opinion comes to a different conclusion. Although my primary concerns do not relate to preservation, we should acknowledge that there is a bit of sleight of hand in concluding that the issue was preserved.

Neither Petitioner actually preserved a *Batson* issue the way we would ordinarily require. In particular, after questioning the prosecutor's use of peremptory strikes late in the selection of the jury, Ms. Ray-Simmons ultimately stated that she was satisfied with the jury that was seated – which would ordinarily waive any issue concerning jury selection. *See State v. Stringfellow,* 425 Md. 461, 469-70, 42 A.3d 27 (2012) (acceptance of the jury panel without qualification waives prior objection because "accepting the empaneled jury, without qualification or reservation, is directly inconsistent with the earlier complaint") (quotation and alteration marks omitted); *Gilchrist v. State,* 340 Md. 606, 617, 667 A.2d 876 (1995) (discussing waiver rule in case involving *Batson* objection); *Calhoun v. State,* 297 Md. 563, 579, 468 A.2d 45 (1983).

Ms. McGouldrick did not raise any *Batson* issue at all in the Circuit Court – also a circumstance that would usually be fatal to an attempt to raise a *Batson* challenge on appeal. The Majority opinion surmounts that obstacle by citing a discussion at a pretrial motions hearing on March 28, 2012, that allowed one defendant to adopt objections made by

2

another, although it is not at all clear that it pertained to jury selection.[3] Majority slip op. at 7-10. The selection of the jury that sat in this case began a week later on April 4, 2012, and the *Batson* issue was not raised by counsel for Ms. Ray-Simmons until the following week on April 9, 2012. It seems a very generous reading of the discussion at the motions hearing to apply it to a discussion of peremptory strikes two weeks later – when each party, including all three defendants, were exercising their strikes separately. In any event, the Majority opinion is willing to say that Ms. McGouldrick got on Ms. Ray-Simmons' train for purposes of making a *Batson* objection, but got off it by the time Ms. Ray-Simmons waived her own *Batson* objection at the end of jury selection.[4]

While only Ms. McGouldrick – at best – preserved a *Batson* issue for appeal in this case, the question whether the prosecutor's strikes demonstrated a *prima facie* case of purposeful racial discrimination was presented to the trial court and the trial court ruled on it. In the end, the purpose of the preservation rule is to ensure that the trial court and the opposing party have fair warning of an issue such that the trial court has an opportunity to

---

[3] The discussion appeared to relate to the conduct of the trial – the motions hearing dealt with what evidence could be admitted at trial – not jury selection. An aborted attempt at jury selection did not start until the next day, March 29, 2012. After devoting two days to qualifying the initial jury panel, the Circuit Court dismissed that venire when a threat against one of the prosecution's witnesses and a possibly related shooting required a recess for investigation and possible postponement of the trial. The jury selection process began anew with a new jury panel on April 4, 2012.

[4] The Majority opinion notes that, in contrast to Ms. Ray-Simmons' counsel (who stated that the jury was "acceptable" without reservation), Ms. McGouldrick's counsel stated that the jury panel was acceptable "safe from prior objections," although he made no specific reference to the *Batson* issue raised by counsel for Ms. Ray-Simmons. Majority slip op. at 8.

3

correct any error. *Cf. Peterson v. State*, 444 Md. 105, 124-26, 118 A.3d 925 (2015). That appears to have occurred here, although the failure to make and flesh out any *Batson* issue in the trial court only reinforces the conclusion reached by the Circuit Court for Baltimore City – and the Court of Special Appeals – that the Petitioners failed to establish purposeful discrimination.

*Merits*

As is sometimes the case when a *Batson* issue reaches an appellate court, we know little about the racial and gender composition of the jury venire or of the jury that was ultimately selected.[5] In alleging that a *Batson* violation, counsel for Ms. Ray-Simmons provided only cryptic information about five members of the jury pool, which hinders our consideration of it in this appeal. Neither he nor other defense counsel – to the extent they are deemed to have joined in that allegation – put any information on the record concerning the racial or gender composition of the jury pool or of the jury that was seated.[6] But what is obscure to us was obvious to the trial judge. The trial judge was able to assess that allegation in light of his own observations of, and interactions with, the prospective jurors

---

[5] We can surmise the gender of most jurors from statements of the court clerk, who politely addressed each prospective juror as "Sir" or "Ma'am." But the record provides little information about race, age, and other characteristics that would have been immediately obvious to those in the courtroom.

[6] As best I can tell, the only reference to the racial make-up of the venire occurred in a different context – with the first venire – when counsel for Ms. McGouldrick noted that 14 of the 15 jurors who responded to a question on religious beliefs were African-American.

over several days. Based on what is in the record, there is no reason to hold that the trial judge was clearly erroneous in his ruling.

The Majority opinion accurately describes the three-step *Batson* analysis. Majority slip op. at 2-4. The Majority's decision to reverse the murder convictions in this case appears to turn on one peremptory strike made by the prosecution. It is useful to provide the context, as best we know it from this record, in which that strike was made.

Two *Batson* challenges were made during jury selection. First, the prosecution alleged that there was a racial pattern in the 12 strikes made up to that point by one of the co-defendants (who is not a party to this appeal). The trial court asked defense counsel to explain a sampling of those strikes before concluding that there was not even a *prima facie* case for a *Batson* violation.

Counsel for Ms. Ray-Simmons then made a similar allegation as to the five strikes made by the prosecution. As he had done with respect to the first *Batson* challenge, the trial judge turned to the attorney who had made the strikes – the prosecutor. As the Majority opinion recounts, the prosecutor provided more than a sampling, stating reasons for each strike, which tended to focus on the youth of the prospective jurors and past encounters with law enforcement. As he had with respect to the earlier *Batson* challenge as to the defense strikes, the trial judge concluded that not even a *prima facie* case had been established.

Neither the Petitioners nor the Majority opinion seem to take issue with the reasons offered for four of the strikes. Everything focuses on the prosecutor's statement with respect to her strike of Juror 4583. The prosecutor stated that she "intended to replace him

with another black male" (but that counsel for Ms. Ray-Simmons had struck the prospective replacement).  The prosecutor also stated that she would make additional strikes based on youth.

The record appears to corroborate this explanation.  It is notable that, with respect to the other four prospective jurors who were the subject of the State's peremptory strikes, the prosecutor exercised a peremptory strike against each of those jurors before they were seated in the jury box.  However, when Juror 4583 was initially considered, the prosecutor deemed him "acceptable" and Juror 4583 was seated in the box as Trial Juror 5.  After the box had been filled with 12 jurors, counsel for each party proceeded to strike jurors from the box, presumably to substitute the next member of the remaining venire as a preferable juror.  Most such strikes were exercised by the defendants, but the prosecution struck Juror 4583 from seat 5, which would have had the effect of substituting the next juror in line – Juror 4765 – as Trial Juror 5.[7]  However, that juror was immediately struck by counsel for Ms. Ray-Simmons.  The record corroborates that the substitute juror 4765 was male (the clerk addressed him as "Sir").  While the written record does not indicate his race, none of defense counsel disputed the prosecutor's assertion that he was black.  Nor did anyone dispute that she was striking prospective jurors who were younger.

The Majority opinion concludes that the prosecution's strike of Juror 4583 was not race and gender neutral, because she made reference to the race and gender of the juror

---

[7] Five more jurors were struck from the box, as the parties apparently attempted to replace seated jurors with remaining members of the venire that they deemed in some way preferable.

who would have taken his place. Majority slip op. at 13. In context, the statement does not support a finding of purposeful discrimination. It appears that the prosecutor's explanation was that she had found the next prospective juror in line preferable to the one she had already agreed to seat as Trial Juror 5. She was pointing out that her intended substitution would not have affected the gender and racial make-up of the jury – which contradicted the contention that there was a *prima facie* showing of purposeful discrimination. In other words, she was contesting step one of the inquiry – whether there was a *prima facie* showing of purposeful discrimination. The trial judge, who was able to assess any pattern in strikes against the composition of the entire venire, agreed with her and found that a *prima facie* case had not been made.

From our perch on the appellate bench, perhaps it would be helpful to have a fuller explanation from the prosecutor as to why she preferred Juror 4765 to Juror 4583, even though it would not have changed the racial and gender make-up of the jury, or to have more information about the jury venire.[8] The trial judge was in a position to assess whether Trial Juror 5 was younger than his intended replacement and whether that strike fit the

---

[8] Perhaps if we knew the composition of the jury pool, we could make our own assessment whether the prosecution was striking black male jurors at a disproportionate rate. For example, in *Johnson v. California*, 545 U.S. 162 (2005) and *Batson* itself, a *prima facie* case was established when the prosecution's peremptory strikes had the effect of eliminating all of the prospective black jurors. *See also Central Alabama Fair Housing Center, Inc. v. Lowder Realty Co.*, 236 F.3d 629, 637 (11th Cir. 2000) ("an inference of discrimination based on the number of jurors of a particular race may arise where there is a substantial disparity between the percentage of jurors of one race struck and the percentage of their representation on the jury."). However, Ms. Ray-Simmons provided no such information when she made her challenge.

7

pattern proffered by the prosecutor. It is evident to anyone who reads the transcript of the five days spent on jury selection in this case that the trial judge carefully controlled the jury selection process and was very attentive throughout it.[9] He concluded that a *prima facie* case of purposeful discrimination had not been established, and I cannot say that his assessment of the facts relating to the *Batson* issue was clearly erroneous.[10]

**Peremptory Strikes**

The prosecutor's statement, even if not a *Batson* violation, may be disquieting as it seems to treat an individual as a crudely defined commodity who is interchangeable with other individuals who share particular characteristics. This is not unusual in the world of peremptory strikes. It is one of several reasons for abolishing peremptory strikes.

In *Batson* itself, Justice Thurgood Marshall suggested in a concurring opinion that ending discrimination in peremptory strikes would be best achieved by abolishing peremptory strikes altogether.[11] Others have come to the same conclusion.[12] And we have

---

[9] For example, at the conclusion of the selection process, he reminded defense counsel that they had raised questions earlier about one of the seated jurors and inquired whether they wished to exercise one of their unused peremptories to excuse that juror.

[10] The Majority opinion contends that it is irrelevant whether there was a *prima facie* case on the ground that the prosecutor's statements automatically moved the discussion to step two of the *Batson* analysis. Majority slip op. at 12. But the prosecutor's statement appears to be addressed to step one of the analysis – and that is apparently how the trial judge understood it as well.

[11] 476 U.S. 105-8.

[12] *See, e.g., Miller-El v. Dretke*, 545 U.S. 231, 266-73 (2005) (Breyer, J.) (cataloging the inadequacies of the *Batson* approach and concluding that "a jury system without peremptoriness is no longer unthinkable"); *Washington v. Saintcalle*, 309 P.3d 326, 347-71 (Wash. 2013) (Gonzalez, J., concurring); *Minetos v. City University of New York*, 925

the power to do that in Maryland through a change in the rules.[13]

There is no compelling reason to retain peremptory strikes. They are not required by the State or federal constitutions.[14] They are a product of English common law, under which the Crown (the prosecution) had an unlimited number of strikes and a defendant was given 35 peremptory strikes as a sort of compensation.[15] The number of peremptory strikes for each side was reduced over the years and eliminated altogether in England during the last century.[16]

There are good reasons to disclaim this part of our legal inheritance. In practice, even when not based on invidious discrimination, peremptory strikes are usually the

---

F. Supp. 177 (S.D.N.Y. 1996) (Motley, J.); M. Hoffman, *Peremptory Challenges Should be Abolished: A Trial Judge's Perspective*, 64 U. Chi. L. Rev. 809 (1997).

[13] In criminal cases in Maryland, peremptory challenges are provided by rule and statute. *See* Maryland Code, Courts & Judicial Proceedings Article, §8-420; Maryland Rule 4-313. However, because peremptory strikes concern practice and procedure in the circuit courts, a later-enacted rule that abolishes peremptory strikes would trump not only the current rule, but also the statute. *See, e.g., County Federal Savings & Loan Ass'n v. Equitable Savings & Loan Ass'n*, 261 Md. 246, 252-53, 274 A.2d 363 (1971); *Smith v. State*, 5 Md. App. 633, 634 n.1, 248 A.2d 913, *cert. denied*, 254 Md. 719 (1969) (statute forbidding guilty pleas in murder cases overridden by later court rule); 66 *Opinions of the Attorney General* 80, 84 (1981) ("as between an inconsistent rule of the Court of Appeals and a statute enacted by the General Assembly, the last enacted will prevail").

[14] *See Rivera v. Illinois*, 556 U.S. 148, 157 (2009); *Gilchrist, supra,* 340 Md. at 620 n.2.

[15] *See* M. Hoffman, *Peremptory Challenges Should be Abolished: A Trial Judge's Perspective*, 64 U. Chi. L. Rev. 809, 816-22 (1997). The prosecution received unlimited strikes apparently on the theory that the Crown could do no wrong and that its strikes were necessarily for good cause. Needless to say, we no longer subscribe to that theory.

[16] Peremptory challenges were abolished in England in 1988. *See Miller-El, supra*, 545 U.S. at 272.

product of hunches, stereotypes, and folklore. The renowned trial lawyer, Clarence Darrow, once explained his rules of thumb for exercising peremptory strikes:

> Never take a German; they are bullheaded. Rarely take a Swede; they are stubborn. Always take an Irishman or a Jew; they are the easiest to move to emotional sympathy. Old men are generally more charitable and kindly disposed than young men; they have seen more of the world and understand it.

*quoted in* R. Hanley, *Getting to Know You*, 40 Am U. L. Rev. 865, 866 (1991). (We do not know what Mr. Darrow thought of women or members of racial minorities as prospective jurors as they were absent from the jury pool in his day.) Other famous trial lawyers have relied on body types, physiognomy, and the like. *Id.* Given the limited inquiry that typically occurs during *voir dire,*[17] trial lawyers likely have little else on which to base their strikes. Counsel for Ms. Ray-Simmons made precisely this point in despairing of the limited information available during the jury selection process in this case:

> So, where – how do we just X them? Based on looks alone or, Your Honor, that's like asking us all to pick a jury based on tea leaf reading or something ....

*State v. Ray-Simmons, et al.,* Case No. 110308026, etc. (Transcript of March 28, 2012 at p. 208). As long as we retain challenges for cause as part of the jury selection process, there is no reason to enshrine such arbitrary judgments as part of our system of justice.

**Conclusion**

The respected trial judge, now a federal judge, who oversaw the lengthy jury selection process in this case aptly summarized the purpose of that process: "[P]icking a

---

[17] *See Pearson v. State*, 437 Md. 350, 86 A.3d 1232 (2014).

jury isn't rocket science, all you want is a group of people that are fair." *State v. Ray-Simmons, et al.*, Case No. 110308026, etc. (Transcript of March 30, 2012 at p. 240) (Hon. George L. Russell, III).  In my view, he was not clearly erroneous when he found that a *prima facie* case of purposeful discrimination was not established.  Reversing the murder conviction of a defendant who professed to be satisfied that she was being tried by a fair and impartial jury ultimately does little to improve the jury selection process.  Instead, we should follow the example of the legal system that gave us peremptory strikes and abolish them in favor of a process limited to challenges for cause.